1  John Brosnan
2  3321 Vincent Road
3  Pleasant Hill, CA 94523
4  510.779.1006 : Tel
5  925.237.8300 : Fax

6

7                    UNITED STATES DISTRICT COURT

8                   NORTHERN DISTRICT OF CALIFORNIA

9

| | |
|---|---|
| JOHN BROSNAN DBA APEX ISP SERVICES,<br><br>Plaintiff,<br><br>v.<br><br>NET-LEADS.NET, PHA-CANADIAN.COM, NBOSBOEOE.COM, SHOESPRESTIGESTREET.COM, LESBIANSFROMINDIA.COM, MYASIANMASSAGE.COM, DADDIESFRIEND.COM, BIGBLACKPIMP.COM, SHYCOLLEGEGIRLS.COM, HANDJOBMODELS.COM, GAGSCHOOL.COM, BOOBIEBANGERS.COM, 150N1.COM, DANCEONMYDICK.COM, JUSTCREAMPIE.COM, EXPLOITEDINDIANTEENS.COM, ULTRAHENTAIPASS.COM, PRIMEPORNPASS.COM, JERKMENOW.COM,GIVEMEANIME.COM, JIZZONGLASSES.COM, COCKLOVINGMOMS.COM, FOOTJOBMODELS.COM, FINGERTILLCUM.COM, ALLNETWORKPASS.COM, MYMILFCRUSH.COM, INDIANPORNPASS.COM, ANGEL2SLUTS.COM, LOADBUSTINGSITES.COM, TEENPOVFACIALS.COM, | CASE NUMBER : C 07 4339 JL<br><br>SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - VIOLATION OF 2003 CAN-SPAM ACT [15 U.S.C. §7701, *et seq.*] |

1st AMENDED COMPLAINT

GAGONMYCOCK.COM, REALSEXSCANDALS.COM, GWENSCAM.COM, GROUPTEENCASTING.COM, BIANCAHILL.COM, CUTETANYA.COM, CUTEMARIE.COM, TEENSTAKEITBIG.COM, LUNABANKS.COM, DANIMILES.COM, TINYMIA.COM, SUECUTE.COM, TATQUEEN.COM, SEXYSOFTBABES.COM, CINDYRED.COM, BUSTYLUNA.COM, ADULTDREAMS.COM, ASIANPLEASURES.COM, GIVEMEANIME.COM, PRIMEPORNPASS.COM, ULTRAHENTAIPASS.COM, XIN NET TECHNOLOGY CORPORATION, WWW.XINNET.COM

DEFENDANTS.

JOHN BROSNAN alleges as follows:

JURISDICTION, VENUE, AND PARTIES

1.   This Court has original jurisdiction of the causes of action herein which are brought under the CAN-SPAM Act of 2003 - 15 U.S.C. §7701, et seq., 15 U.S.C. §7707(g)(1).

2.   The unlawful actions of the defendants were committed in the State of California and in the judicial district of this Court.

3.   Plaintiff is a California business located in Pleasant Hill, California, and provides Internet access service within the meaning of 15 U.S.C. §7703(11).

4.   Plaintiff is informed and believes that NET-LEADS.NET ("NETLEADS") is an Arizona business.

5.   Plaintiff is informed and believes that PHA-CANADIAN.COM ("PHACANADIAN") is a Canadian business.

6.   Plaintiff is informed and believes that NBOSBOEOE.COM ("NBOS") is a Chinese business.

7.    Plaintiff is informed and believes that SHOESPRESTIGESTREET.COM ("PRESTIGE") is a Tennessee business.

8.   Plaintiff is informed and believes that ADULTDREAMS.COM  is an internet business.

9.   Plaintiff is informed and believes that ASIANPLEASURES.COM is an internet business.

1st AMENDED COMPLAINT

10.  Plaintiff is informed and believes that GIVEMEANIME.COM is an internet business.

11.  Plaintiff is informed and believes that PRIMEPORNPASS.COM is an internet business.

12.  Plaintiff is informed and believes that ULTRAHENTAIPASS.COM is an internet business.

13.

14.  Plaintiff is informed and believes that LESBIANSFROM INDIA.COM ("PORN") is an internet business.

15.  Plaintiff is informed and believes that MYASIANMASSAGE.COM ("PORN") is an internet business.

16.  Plaintiff is informed and believes that DADDIESFRIEND.COM ("PORN") is an internet business.

17.  Plaintiff is informed and believes that BIGBLACKPIMP.COM ("PORN") is an internet business.

18.  Plaintiff is informed and believes that SHYCOLLEGEGIRLS.COM ("PORN") is an internet business.

19.  Plaintiff is informed and believes that HANDJOBMODELS.COM ("PORN") is an internet business.

20.  Plaintiff is informed and believes that GAGSCHOOL.COM ("PORN") is an internet business.

21.  Plaintiff is informed and believes that BOOBIEBANGERS.COM ("PORN") is an internet business.

22.  Plaintiff is informed and believes that 15ON1.COM ("PORN") is an internet business.

23.  Plaintiff is informed and believes that DANCEONMYDICK.COM ("PORN") is an internet business.

24.  Plaintiff is informed and believes that JUSTCREAMPIE.COM ("PORN") is an internet business.

25.  Plaintiff is informed and believes that EXPLOITEDINDIANTEENS.COM ("PORN") is an internet business.

26.  Plaintiff is informed and believes that ULTRAHENTAIPASS.COM ("PORN") is an internet business.

27.  Plaintiff is informed and believes that PRIMEPORNPASS.COM ("PORN") is an internet business.

1st AMENDED COMPLAINT

28. Plaintiff is informed and believes that JERKMENOW.COM ("PORN") is an internet business.

29. Plaintiff is informed and believes that GIVEMEANIME.COM ("PORN") is an internet business.

30. Plaintiff is informed and believes that JIZZONGLASSES.COM ("PORN") is an internet business.

31. Plaintiff is informed and believes that COCKLOVINGMOMS.COM ("PORN") is an internet business.

32. Plaintiff is informed and believes that FOOTJOBMODELS.COM ("PORN") is an internet business.

33. Plaintiff is informed and believes that FINGERTILLCUM.COM ("PORN") is an internet business.

34. Plaintiff is informed and believes that ALLNETWORKPASS.COM ("PORN") is an internet business.

35. Plaintiff is informed and believes that MYMILFCRUSH.COM ("PORN") is an internet business.

36. Plaintiff is informed and believes that INDIANPORNPASS.COM ("PORN") is an internet business.

37. Plaintiff is informed and believes that ANGEL2SLUTS.COM ("PORN") is an internet business.

38. Plaintiff is informed and believes that LOADBUSTINGSITES.COM ("PORN") is an internet business.

39. Plaintiff is informed and believes that TEENPOVFACIALS.COM ("PORN") is an internet business.

40. Plaintiff is informed and believes that GAGONMYCOCK.COM ("PORN") is an internet business.

41. Plaintiff is informed and believes that REALSEXSCANDALS.COM ("PORN") is an internet business.

42. Plaintiff is informed and believes that GROUPTEENCASTING.COM ("PORN") is an internet business.

43. Plaintiff is informed and believes that BIANCAHILL.COM ("PORN") is an internet business.

44. Plaintiff is informed and believes that CUTETANYA.COM ("PORN") is an internet

business.

45. Plaintiff is informed and believes that CUTEMARIE.COM ("PORN") is an internet business.

46. Plaintiff is informed and believes that TEENSTAKEITBIG.COM ("PORN") is an internet business.

47. Plaintiff is informed and believes that TITJOBMODELS.COM ("PORN") is an internet business.

48. Plaintiff is informed and believes that IPOSEFORDADDY.COM ("PORN") is an internet business.

49. Plaintiff is informed and believes that LESBIANSEXTALES.COM ("PORN") is an internet business.

50. Plaintiff is informed and believes that PUREMEDS.COM ("PORN") is an internet business.

51. Plaintiff is informed and believes that JENNIAPPLES.COM ("PORN") is an internet business.

52. Plaintiff is informed and believes that LUNABANKS.COM ("PORN") is an internet business.

53. Plaintiff is informed and believes that DANIMILES.COM ("PORN") is an internet business.

54. Plaintiff is informed and believes that TINYMIA.COM ("PORN") is an internet business.

55. Plaintiff is informed and believes that SUECUTE.COM ("PORN") is an internet business.

56. Plaintiff is informed and believes that TATQUEEN.COM ("PORN") is an internet business.

57. Plaintiff is informed and believes that SEXYSOFTBABES.COM ("PORN") is an internet business.

58. Plaintiff is informed and believes that CINDYRED.COM ("PORN") is an internet business.

59. Plaintiff is informed and believes that BUSTYLUNA.COM ("PORN") is an internet business.

60. Plaintiff is informed and believes that XIN NET TECHNOLOGY CORPORATION ("XINNETCORP") is an internet business.

61. Plaintiff is informed and believes that XINNET.COM ("XINNET") is an internet business.

## FACTS

62. John Brosnan DBA Apex ISP Services ("BROSNAN") owns the computers on which Apex ISP Services resides.

63. SPAM is unsolicited commercial email.

64. The sending of SPAM is a violation of the CAN-SPAM Act of 2003.

65. BROSNAN has suffered substantial decreased bandwidth as a result of defendants' illegal SPAM. At times the volume of SPAM from defendants has accounted for more than 99.9% of BROSNAN'S total bandwidth.

66. BROSNAN'S network integrity has been compromised on more than one occasion by the unrelenting attack of SPAM being perpetrated upon BROSNAN. At times the volume of SPAM is so high that BROSNAN must shut off the internet connection to his servers in order to do routine normal administrative tasks. Said shutdowns have caused BROSNAN lost business.

67. BROSNAN'S computers utilize hard drives on which data is stored for delivery via the internet. A hard drive under normal use without being plagued by SPAM lasts more than 2 years. A direct result of the SPAM which is constantly being sent to BROSNAN'S email server has caused the hard drives to fail in less than 3 months. Said failures have caused serious downtime and costs for BROSNAN as well as lost revenue associated with the downtime of the servers.

68. BROSNAN has investigated the costs of installing SPAM prevention systems on his computers but the costs are prohibitively high. Another aspect of the SPAM war is that SPAMMERS will work to shut down servers that employ SPAM fighting technology. Which then increases the costs of fighting the SPAMMER. The following is from an article that appeared in WIRED Magazine on May 16, 2006 :

> **A startup whose aggressive antispam measures drew a blistering counterattack from spammers two weeks ago that brought down the company's servers along with a wide swath of the internet is shuttering its program targeting junk e-mailers.**
>
> **In an interview with Wired News, Blue Security CEO Eran Reshef said the Israel-based company was closing its service Wednesday. He did not want to be responsible for an ever-escalating war that could bring down internet service providers and websites around the world and subject its users to denial-of-service attacks from a well-organized group controlling a massive army of computer drones.**

1st AMENDED COMPLAINT

**"Our community would very much like us to continue on the fight against spam, and our community has grown over the last week," Reshef said. "But at the end of the day if we continue doing so, within a few days, major websites will go down. I don't feel that this is something I can be responsible for. I cannot go ahead and rip up the internet to make Blue Security work. This is not the decision a commercial entity can make."**

**The abrupt decision ends a high-profile standoff between spammers and a tiny startup whose unorthodox methods had seemingly stymied some of the most prolific purveyors of junk e-mail in the world, if only temporarily. For a few intense days, the fight showed with shocking clarity the lengths to which some spammers will go to protect their businesses, and the devastating arsenals at their command.**

**The lesson to be learned, Reshef said, is that large ISPs and governments need to recognize that spammers are connected to criminal syndicates and that they, not a small startup, are the only ones who can shut down these networks.**

**Blue Security's 500,000 users had been successful in convincing six of the top 10 spam operations in the world to use its open-source mailing-list scrubber, which Reshef said proved that Blue Security's technology and approach was effective.**

**But other spammers responded differently.**

**Starting May 2, a spammer known as PharmaMaster used a massive network of zombie computers to flood Blue Security's database servers with fake traffic and hijacked a little-known Cisco Systems router feature known as "blackhole filtering" to block anyone outside Israel from accessing Blue Security's homepage.**

**The spammer also unleashed a torrent of spam targeted to a subset of Blue Security users, which the spammer had likely gotten by scrubbing an e-mail list and then comparing the old list with the new list. Any addresses removed from the old list could be identified as Blue Security users.**

**The distributed-denial-of-service attack brought down the databases, and the collateral damage included hundreds of thousands of websites and mail servers hosted by Tucows, the internet's largest domain registrar, according to Elliot Noss, president and CEO of Tucows.**

**"Just in terms of pure scale, it's pretty safe to call it massive," Noss said. "I think that really the most interesting observation was how distributed it was. We sampled IP addresses and over 70 percent were unique."**

**Blogging software provider Movable Type's hosted service, TypePad, also fell victim to PharmaMaster's bot network, after Blue Security realized no one could reach its homepage and posted a message to its users on its old blog. Thirty minutes later, PharmaMaster started an attack that brought down thousands of blogs.**

**Blue Security's Blue Frog antispam tool worked by having customers install a small piece of software in their browsers that they used to report spam. After aggregating the reports, Blue Security would try to contact the spammers, the websites of companies being advertised and their ISPs to try to convince the spammers to clean their lists of e-mail accounts on the company's Do Not Intrude list.**

**If that did not work, Blue Security would write a custom script that spam recipients could use to send an opt-out request to the advertised website. In practice, that meant that hundreds of thousands of Blue Frog users could attempt to opt out at once. In addition, the software would fill in online order forms with the opt-out request if there was no other way to communicate with a spammer-advertised website.**

69. BROSNAN is a Tucows reseller.  The same same TUCOWS referenced in the prior article wherein an entire company with a full time 24 hour a day staff was targeted and shut down by SPAMMERS in a Denial of Service attack.

70. Denial of Service (DoS) attacks are a class of network security threat whereby one or more attackers target network resources and servers to deny service to legitimate users. Increasingly, such attacks come from multiple, physically and network-topologically separated locations - a variation dubbed "Distributed" DoS attacks or DDoS attacks - making it harder to locate the attacker or thwart the attacker.

71. BROSNAN has incurred costs associated with hiring technical help to try to stop SPAM but has been unsuccessful.

72. SPAM now represents more than 95% of the email flowing across the internet.  No company offers the ability to stop SPAM from arriving at a server.

73. Barracuda Networks which tracks SPAM reported that as of March 17, 2008, they had analyzed 1,835,857,647 emails of which 1,717,667,390 of them were SPAM.

74. Of the more than 1.8 Billion emails they studied; less that 7% were legitimate.

75. BROSNAN has incurred increased costs associated with having to pay for additional bandwidth in order to receive the legitimate emails that are a tiny fraction of the millions of SPAM received by BROSNAN every year.

FIRST CAUSE OF ACTION

(Violation of CAN-SPAM Act of 2003 - 15 U.S.C. §7704(a)(1))

ALL DEFENDANTS

76. Plaintiff refers to the allegations of the preceding paragraphs of this complaint, and incorporates the same herein by this reference as though set forth in full.

77. From August 1, 2007 forward, plaintiff received electronic mail from defendants to its mail server located in California that violated the CAN-SPAM Act of 2003.

78. Of the more than 25,0000 relevant electronic mails sent by the defendants beginning August 1, 2007, all contained header information that was materially false or materially misleading. Specifically, the identities provided by the defendants of the machines delivering mail to plaintiff's mail server did not match the purported sender. Therefore, the electronic mail violated U.S.C. §7704(a)(1).

SECOND CAUSE OF ACTION

(Violation of CAN-SPAM Act of 2003 - 15 U.S.C. §7704(a)(2))

ALL DEFENDANTS

79. Plaintiff refers to the allegations of the preceding paragraphs of this complaint, and incorporates the same herein by this reference as though set forth in full.

80. Of the more than 25,000 relevant electronic mails sent by the defendants beginning August 1, 2007, all contained Subject Heading information that was materially false or materially misleading. Specifically, the subject line was misleading and in no way related to the content of the email. Therefore, the electronic mail violated U.S.C. §7704(a)(2).

THIRD CAUSE OF ACTION

(Violation of CAN-SPAM Act of 2003 - 15 U.S.C. §7704(a)(3))

ALL DEFENDANTS

81. Plaintiff refers to the allegations of the preceding paragraphs of this complaint, and incorporates the same herein by this reference as though set forth in full.

82. Of the more than 25,000 relevant electronic mails sent by the defendants beginning August 1, 2007, none contained a valid return email address. Therefore, the electronic mail violated U.S.C. §7704(a)(3).

FOURTH CAUSE OF ACTION

(Violation of CAN-SPAM Act of 2003 - 15 U.S.C. §7704(a)(5))

ALL DEFENDANTS

83. Plaintiff refers to the allegations of the preceding paragraphs of this complaint, and incorporates the same herein by this reference as though set forth in full.

84. Of the more than 25,000 relevant electronic mails sent by the defendants beginning August 1, 2007, none contained a Opt-Out email address or Physical Address. Therefore, the electronic mail violated U.S.C. §7704(a)(5).

85. As a proximate result of said unlawful conduct by said defendants, plaintiff is entitled to damages for the actual monetary loss incurred or statutory damages in the amount of up to $100.00 in the case of violation of Section 5(a)(1) or up to $25.00 in the case of each violation of the other subsections of Section 5 in the form of statutory damages as set forth in 15 U.S.C. §7707(g)(1) and (3)(A).

86. Plaintiff furthermore seeks a preliminary and permanent injunction against the defendants for their current and future violations of the CAN-SPAM Act of 2003 as it and members of the general public will continue to incur damages as a result of the unlawful conduct of said defendants. The seeking of injunctive relief by the plaintiff is specifically authorized by 15 U.S.C. §7707(g)(1)(A).

87. Plaintiff furthermore seeks its attorney fees and costs against the defendants pursuant to 15 U.S.C. §7707(g)(4).

WHEREFORE, plaintiff prays judgment against the defendants and each of them as follows:

1. For actual monetary damages according to proof, or in the alternative, statutory damages for up to $100.00 for each violation of said Section 7006(a)(1) and up to $25.00 in the case of any other violation of said Section 7006;
2. For aggravated damages under 15 U.S.C. §7707(g)(3)(C) of up to three times the amount above for these violations committed by the defendants willfully and knowingly, and for defendants' unlawful activity which includes aggravated violations of section 7005(b);
3. For a preliminary and permanent injunction preventing the defendants and all person acting in concert with them from the violation of the Can-Spam Act of 2003;
4. For an award of reasonable attorneys' fees and costs according to proof;
5. For an award of $10,000,000 against each and every defendant for their intentional

1st AMENDED COMPLAINT

illegal acts;

6. For costs of suit; and

7. For such other and further relief as this Court deems just and proper.

DATED: March 10, 2008

_____

John Brosnan DBA Apex ISP Services

1st AMENDED COMPLAINT